John Evangelist (Thomas) MURPHY, Petitioner–Appellant,

v.

UNITED STATES of America, Respondent–Appellee.

Docket No. 99–2016

United States Court of Appeals, Second Circuit.

Argued: Dec. 8, 1999

Decided: Dec. 20, 1999

Felix V. Lapine, Rochester, NY, for Petitioner–Appellant.

Elizabeth S. Riker, Assistant United States Attorney for the Northern District of New York (Daniel J. French, United States Attorney for the Northern District of New York, of counsel), for Respondent–Appellee.

Before: Oakes, Cardamone, and Cabranes, Circuit Judges.

PER CURIAM.

Petitioner John Evangelist (Thomas) Murphy, a resident of Dolgeville, New York, appeals from a judgment of the United States District Court for the Northern District of New York (Howard G. Munson, *Judge*), entered December 2, 1998, denying his petition for a writ of habeas corpus to prevent his extradition to Canada. *See Murphy v. United States*, No. 98–CV–1058, 1998 WL 1179110 (N.D.N.Y. Dec. 02, 1998) (*"Murphy II"*). On appeal, petitioner argues that (1) his extradition would violate due process and the doctrine of "dual criminality" because his prosecution in the United States is now barred by the applicable statutes of limitation; (2) there is no probable cause to believe that he committed the offenses charged; and (3) 18 U.S.C. § 3184, which establishes the procedures for extradition, is unconstitutional. Although we write to address petitioner's first argument, we find all three of his arguments to be without merit, and therefore affirm.

## BACKGROUND

This case arises out of an investigation by the Royal Newfoundland Constabulary into allegations of physical and sexual abuse of minors at the Mount Cashel Orphanage in St. John's, Newfoundland, in Canada. During this investigation, several former residents of the Orphanage identified petitioner as having sexually or physically abused them when he worked as a priest at the Orphanage between approximately 1951 and 1960.

As a result of these allegations, petitioner was charged under Canadian law with five counts of Indecent Assault, one count of Gross Indecency, and one count of Common Assault. Under Canadian law, there

is no statute of limitation applicable to these offenses.

In November 1996, the Canadian authorities requested petitioner's extradition pursuant to the Treaty on Extradition, Dec. 3, 1971, U.S.-Can., T.I.A.S. No. 8237 (entered into force Mar. 22, 1976), and the Protocol Amending the Treaty on Extradition, Jan. 11, 1988, U.S.-Can., S. TREATY Doc. No. 101–17 (1990) (entered into force on Nov. 26, 1991) (together, the "Treaty"). On May 11, 1998, Murphy was arrested on an extradition warrant.

Following a hearing pursuant to 18 U.S.C. § 3184, United States Magistrate Judge Gustave J. DiBianco entered an Order dated June 30, 1998 finding that petitioner is subject to extradition under the terms of the Treaty. *See In re Extradition of Murphy*, No. 98–M–168, 1998 WL 1179109 (N.D.N.Y. June 30, 1998) ("*Murphy I*"). Judge DiBianco concluded, *inter alia*, that (1) the crimes charged are punishable by at least one year of imprisonment under both Canadian and United States law, and thus within the terms of the Treaty; (2) the fact that petitioner cannot be prosecuted in the United States for his alleged crimes because of the applicable statutes of limitation does not prevent his extradition under the Treaty because there is no statute of limitation for the crimes charged in Canada; and (3) there was probable cause to believe that petitioner committed the crimes charged. *See id.* at \*4–7. In accordance with these findings, Judge DiBianco ordered that a Certificate of Extraditability and Order of Committal, together with a copy of the testimony and evidence presented during

the hearing, be filed with the Secretary of State. *See id.* at \*7.

On July 6, 1998, petitioner filed a document challenging Judge DiBianco's Order. The document, which was treated as a habeas corpus petition pursuant to 28 U.S.C. § 2241 and assigned to Judge Munson,[1] raised three principal arguments: (1) that petitioner cannot be extradited because the applicable statutes of limitation bar his prosecution for the crimes charged in the United States; (2) that there is no probable cause to believe that he committed the crimes charged; and (3) that the extradition procedure set forth in 18 U.S.C. § 3184 is unconstitutional. In a Memorandum–Decision and Order, entered December 2, 1998, Judge Munson rejected these arguments, and denied the petition for habeas corpus accordingly. *See Murphy II*, 1998 WL 1179110, at \*2–5. This timely appeal followed.[2]

## DISCUSSION

On appeal from the denial of habeas corpus in extradition proceedings, our scope of review is narrow. *See, e.g., Austin v. Healey*, 5 F.3d 598, 600 (2d Cir. 1993). A reviewing court "can only 'inquire whether the magistrate had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty.'" *Jhirad v. Ferrandina*, 536 F.2d 478, 482 (2d Cir.1976) (quoting *Fernandez v. Phillips*, 268 U.S. 311, 312, 45 S.Ct. 541, 69 L.Ed. 970 (1925)). The function of habeas review in this context is to test "only

---

1. Petitioner's document was treated as a petition for habeas corpus because "[a]n extraditee's sole remedy from an adverse decision is to seek a writ of habeas corpus." *Ahmad v. Wigen*, 910 F.2d 1063, 1065 (2d Cir.1990).

2. Because petitioner is a federal prisoner and effectively filed his petition pursuant to 28 U.S.C. § 2241, the Antiterrorism and Effective Death Penalty Act's certificate of appealability requirement does not apply to him.

*See, e.g., Sugarman v. Pitzer*, 170 F.3d 1145, 1146 (D.C.Cir.1999) (per curiam) (holding that a certificate of appealability is not required for a federal prisoner to appeal the denial of a § 2241 petition); *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 810 n. 1 (10th Cir.1997) (same); *Forde v. U.S. Parole Comm'n*, 114 F.3d 878, 879 (9th Cir.1997) (same); *Ojo v. INS*, 106 F.3d 680, 681–82 (5th Cir.1997) (same).

the legality of the extradition proceedings; the question of the wisdom of extradition remains for the executive branch to decide." *Wacker v. Bisson,* 348 F.2d 602, 606 (5th Cir.1965).

 As noted, petitioner contends that he cannot be extradited because his prosecution would be time barred under both New York and United States law. *See* 18 U.S.C. §§ 3282–3283 (establishing a five-year limitation period for most non-capital offenses, but stating that "[n]o statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse of a child under the age of 18 years shall preclude such prosecution before the child reaches the age of 25 years"); N.Y.CRIM. PROC. LAW § 30.10(2)(b), (3)(f) (establishing a five-year limitation period for certain felonies, but noting that, in cases involving sexual abuse of a minor, among others, "the period of limitation shall not begin to run until the child has reached the age of eighteen or the offense is reported to a law enforcement agency ..., whichever occurs earlier"). Petitioner concedes that there is no statute of limitation in Canada for the crimes charged, but he argues that extradition under these circumstances would violate either due process or the doctrine of "dual criminality." Under the doctrine of dual criminality, an accused can be extradited "only if the alleged criminal conduct is considered criminal under the laws of both the surrendering *and* requesting nations." *Clarey v. Gregg,* 138 F.3d 764, 765 (9th Cir.1998) (internal quotation marks omitted) (emphasis added), *cert. denied,* —— U.S. ——, 119 S.Ct. 131, 142 L.Ed.2d 106 (1998). Article 2(1) of the Treaty itself incorporates the doctrine of dual criminality. *See* Treaty art. 2(1), S. TREATY DOC. No. 101–17, at 5 ("Extradition shall be granted for conduct which constitutes an offense punishable by the laws of both Contracting Parties....").

We have not previously addressed the relationship between extradition and the statute of limitations of an asylum state.

*But cf. First Nat'l City Bank of N.Y. v. Aristeguieta,* 287 F.2d 219, 226–27 (2d Cir. 1960) (noting, in *dicta,* that a fugitive seeking to prevent extradition "cannot introduce ... evidence that the statute of limitation has run") (citing *Hatfield v. Guay,* 87 F.2d 358 (1st Cir.1937)), *vacated on other grounds,* 375 U.S. 49, 84 S.Ct. 144, 11 L.Ed.2d 106 (1963). In *Kamrin v. United States,* 725 F.2d 1225 (9th Cir. 1984), however, a panel of the Ninth Circuit considered, and rejected, arguments very similar to those made by petitioner here. While delay in seeking extradition may be relevant to the Secretary of State's final determination as to whether a fugitive should be extradited, the *Kamrin* Court held, "delay may not ... serve as a defense to judicial extradition proceedings." *Id.* at 1227. "[A]bsent a specific treaty provision, the statute of limitation may be raised as a defense to criminal proceedings *only after return to the requesting state.*" *Id.* (emphasis added); *accord Merino v. United States Marshal,* 326 F.2d 5, 12 (9th Cir.1963); *Freedman v. United States,* 437 F.Supp. 1252, 1263 (N.D.Ga.1977); *see also Theron v. United States Marshal,* 832 F.2d 492, 499 (9th Cir.1987) (stating that the "inquir[ies] concerning dual criminality and the statute of limitations [are] distinct"—that is, "[t]he focus of the [dual criminality inquiry] is on the conduct that the law criminalizes, not the statute of limitations").

In the present case, the Treaty does contain a specific provision concerning statutes of limitation. Like a clause in the treaty between Australia and the United States at issue in *Kamrin,* Article 4(1)(ii) of the Treaty provides that "[e]xtradition shall not be granted ... [w]hen the prosecution for the offense has become barred by lapse of time according to the laws of the *requesting State.*" Treaty art. 4(1)(ii), T.I.A.S. No. 8237, at 6 (emphasis added); *cf. Kamrin,* 725 F.2d at 1227. Thus, under the Treaty, a fugitive may raise a statute of limitation defense to avoid extradition, but only one based on the statute of limita-

tion of the *requesting* state. *Cf. Clarey,* 138 F.3d at 766 (interpreting a treaty between Mexico and the United States, under which a person "shall not" be extradited when his prosecution "has become barred by lapse of time according to the laws of the requesting *or* requested Party" (emphasis added)). Because there is no statute of limitation barring petitioner's prosecution in Canada, petitioner is therefore extraditable under the terms of the Treaty.

▮ Notwithstanding petitioner's argument to the contrary, Article 8 of the Treaty, which states that any "person whose extradition is sought shall have the right to use all remedies and recourses provided by [the law of the requested state]," T.I.A.S. No. 8237, at 8, has no effect on this analysis. As the Ninth Circuit explained in *Kamrin,* 725 F.2d at 1227–28, and, more recently, in *In re Extradition of Kraiselburd,* 786 F.2d 1395, 1398 (9th Cir.1986), such a "rights and recourses" clause does not entitle a fugitive to the constitutional protections that "underl[y] United States statutes of limitations," *Kamrin,* 725 F.2d at 1227; *cf. Yapp v. Reno,* 26 F.3d 1562, 1567 (11th Cir. 1994). One who commits a crime in a foreign country simply " 'cannot complain if required to submit to such modes of trial . . . as the laws of that country may prescribe for its own people, unless a different mode be provided for by treaty.' " *Kamrin,* 725 F.2d at 1228 (quoting *Neely v. Henkel,* 180 U.S. 109, 122–23, 21 S.Ct. 302, 45 L.Ed. 448 (1901)).

We have carefully considered petitioner's two other arguments—that there is no probable cause to believe he committed the crimes charged and that 18 U.S.C. § 3184, which establishes the procedure for extradition, is unconstitutional—and find them to be without merit, substantially for the reasons stated by Judge Munson and Magistrate Judge DiBianco in their respective decisions. *See Murphy II,* 1998 WL 1179110, at *3–4; *Murphy I,* 1998 WL 1179109, at *6–7; *see also Lo Duca v.*

*United States,* 93 F.3d 1100, 1103–11 (2d Cir.1996) (holding that § 3184 does not violate the Constitution); *Austin,* 5 F.3d at 603–04 (same).

CONCLUSION

For the reasons stated above, we conclude that petitioner's arguments in favor of habeas corpus are without merit. Accordingly, the judgment of the District Court is affirmed.